**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

JAQUAN BRADFORD,

        Plaintiff,

vs.

DEBORAH HANUS,
ILONA AVERY, JOAN GERBO,
and ROBERT HENDRICKS,

        Defendants.

No. 14-CV-131-MWB

**REPORT AND RECOMMENDATION
ON MOTION FOR SUMMARY
JUDGMENT**

_____

## TABLE OF CONTENTS

I.  Introduction.................................................................................2

II.  Procedural History ........................................................................2

III.  Factual Summary...........................................................................3

IV.  Summary Judgment Standards ..........................................................6

V.  Analysis.....................................................................................8

    A. Statute of Limitations ...............................................................9

    B. Qualified Immunity ................................................................ 11

        1. Deprivation of Education ...................................................... 12

        2. Seclusion ...................................................................... 14

        3. SexualAbuse .................................................................. 17

    C. Personal Involvement ...............................................................20

        1. SexualAbuse .................................................................. 21

    2. Seclusion and Deprivation of Education ........................................... 22

    3. Injured Arm .................................................................................. 23

  D. Damages .................................................................................... 23

    1. Injured Arm .................................................................................. 25

    2. Deprivation of Education ................................................................ 26

    3. Seclusion ...................................................................................... 26

    4. Sexual Abuse ............................................................................... 28

VI.   CONCLUSION ................................................................................ 29

## I.    INTRODUCTION

This matter is before the Court on remand from the Eighth Circuit Court of Appeals pursuant to defendants' Motion for Summary Judgment. (Docs. 44, 59). Plaintiff filed a timely resistance (Doc. 48), and defendants timely filed a reply. (Doc. 52). I heard oral argument on September 29, 2017. For the reasons set forth below, I respectfully recommend that the District Court **grant in part and deny in part** defendants' Motion for Summary Judgment. Based on my findings, I respectfully recommend that plaintiff's claims pertaining to seclusion and deprivation of an education be permitted to proceed to trial.

## II.    PROCEDURAL HISTORY

Plaintiff filed his Second Amended Complaint on March 11, 2015, alleging that, while housed at Iowa Juvenile Home ("IJH") during his minority, plaintiff suffered constitutional violations at the hands of defendants. He brought suit under 42 U.S.C. § 1983 seeking damages for these violations. (Doc. 19). Specifically, plaintiff alleges defendants violated his Fourth, Eighth, and Fourteenth Amendment rights because defendants subjected him to lengthy periods of solitary confinement resulting in mental and physical injury, and denied him school instruction. (*Id.*).

Subsequently, defendants moved for summary judgment. (Doc. 44). The Honorable Edward J. McManus, United States District Court Judge, granted summary judgment on March 10, 2016, (Doc. 54), and plaintiff appealed to the United States Court of Appeals for the Eighth Circuit. (Doc. 56). The Eighth Circuit reversed and remanded to this Court with instructions to conduct a "more thorough review of defendants' motion for summary judgment." *Bradford v. Palmer*, 855 F.3d 890, 893 (8th Cir. 2017).

On May 1, 2017, this case was assigned to the Honorable Mark W. Bennett, United States District Court Judge, who referred defendants' motion to the undersigned United States Magistrate Judge for a report and recommendation. (Doc. 62). Pursuant to an order issued by the undersigned, defendants filed their Answer to plaintiff's Second Amended Complaint on August 24, 2017. (Doc. 64).

### III.    FACTUAL SUMMARY

As the matter currently before me is a motion for summary judgment, all justifiable factual inferences will be drawn in plaintiff's favor. *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014).

Plaintiff was born in April 1996, (Docs. 19, at 4; 64, at 2), and alleges that the constitutional violations occurred between August 29, 2008, and December 21, 2010, the time during which plaintiff was housed at IJH. (Docs. 19; 44-1, at 1). Thus, plaintiff was between the ages of twelve and fourteen years when the alleged violations occurred. Plaintiff's eighteenth birthday occurred in April 2014, and plaintiff filed the instant suit on December 9, 2014, fewer than six months after he attained the age of majority.

IJH was established under Title VI, Chapter 233B, Iowa Code; it was governed and controlled by the Iowa Department of Human Services pursuant to Iowa Code § 218.1[1] and has closed since the instant case was filed. Thus, those state officials who

---

[1] Section 218.1 reads:

> The director of human services shall have the general and full authority given under statute to control, manage, direct, and operate the following institutions under the director's jurisdiction, and may at the director's discretion assign the

were employed by IJH are potentially suable persons in their personal capacities under Section 1983. *Hafer v. Melo*, 502 U.S. 21, 23 (1991). Defendant Deborah Hanus served as the Superintendent of IJH during plaintiff's residence at IJH. (Doc. 64, at 2). Defendant Ilona Avery served as the Clinical Director of IJH during plaintiff's residence at IJH. (*Id.*). Defendant Joan Gerbo served as the Director of Education of IJH during plaintiff's residence at IJH. (*Id.*). Defendant Robert Hendricks was a Youth Service Worker of IJH during plaintiff's residence at IJH. (*Id.*).

Plaintiff was admitted to IJH as a Child in Need of Assistance amidst a childhood marred with behavioral and legal issues. (Docs. 19, at 4; 54, at 3). Upon his admission to IJH, plaintiff was determined to be subject to the Adolescent Sexual Awareness Policy and was termed an "ASAP" individual, indicating that he required close supervision when in proximity with any other IJH resident because he was deemed to be at risk for sexual acting out behavior. (Doc. 19, at 5). On multiple occasions, however, plaintiff had contact with two other IJH residents without the supervision warranted by his designation as an ASAP individual, and sexual activity took place between the youths on those occasions. (Docs. 19, at 5-6; 50, at 71-86; 52-1, at 5-8). An Iowa Department of Human Services investigation was conducted and the investigator found that Robert Hendricks was plaintiff's caretaker when the sexual encounters took place; further, the investigator noted confirmed findings of denial of critical care and failure to provide proper supervision. (Doc. 50, at 84).

IJH maintained four facilities that were used to segregate residents in isolation. The facilities were termed the Quiet Room, the Control Room, the Infirmary, and the Support Unit. (Doc. 19, at 6). During plaintiff's stay at IJH, he was relegated to solitary confinement for a variety of reasons for varying lengths of time, with single incidents of seclusion sometimes lasting several hours. (*See, e.g.*, Doc. 50-2, at 128 (showing a

---

powers and authorities given the director by statute to any one of the deputy directors, division administrators, or officers or employees of the divisions of the department of human services: . . . Iowa juvenile home.

single incident of seclusion continuing for four hours and fifty-four minutes)).  Further, the incomplete IJH records show that plaintiff could spend at least six hours and fourteen minutes in seclusion in a single day, though the incomplete nature of the records makes it impossible to ascertain the exact amount of time plaintiff spent in seclusion during his stay at IJH.  (*Id.*, at 134-36).[2]  Plaintiff alleges that defendants acted with deliberate indifference with respect to his confinement in these facilities and that, as a result of being subjected to solitary confinement for extended periods, plaintiff suffered severe emotional and psychological damage.  (Doc. 19).

During his solitary confinement, plaintiff was not provided any formal educational instruction and was merely given assignments to complete on his own; plaintiff was unable to teach himself the material and complete his schoolwork.  (Docs. 19, at 7-8 (explaining that on a June 29, 2010, progress report, it was noted that "[s]ince [Mr. Bradford] has been programmed at the Support Unit, he has not returned any work that has been sent," and that "his social skills and behaviors eliminate his attending classes" (alterations in original)); 48-2, at 3; 52-1, at 2; 52-2, at 30 (attendance report indicating failing grades in five out of the six courses in which plaintiff was enrolled)).  As a result, plaintiff argues he was deprived of due process in being sent to one of the four facilities, he was deprived of basic human needs or the minimal civilized measure of life's necessities, that he was not given the schooling he had a right to, and that he suffered damages as a result.  (Doc. 19, at 9-11).

Finally, plaintiff suffered physical injuries while in residence at IJH.  Although the exact circumstances surrounding plaintiff's physical injuries are in dispute, both parties agree that while housed at IJH, plaintiff forced his right arm through a glass window causing extensive injuries to his arm and necessitating surgical intervention.

---

[2]  The Infirmary Seclusion Records contained in plaintiff's appendix indicate that plaintiff frequently spent almost the entire day in seclusion, but it is unclear whether plaintiff was truly in isolation during those times.

(Docs. 19, at 8; 52-1, at 5). Plaintiff testified that his right arm is now paralyzed as a result and that he receives disability benefits because of the injury. (Doc. 50, at 8).

## IV.    SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate when the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2016). A movant must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "An issue of material fact is genuine if it has a real basis in the record," *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted), or "when a reasonable jury could return a verdict for the nonmoving party on the question," *Wood v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (internal quotation marks and citation omitted). Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of fact genuine. In sum, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" that it "require[s] a jury or judge to resolve the parties' differing versions of the truth at trial." (*Id*. at 249 (internal quotation marks omitted)).

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395. Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or other evidence designate specific facts showing that

there is a genuine issue for trial. *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005).

In determining whether a genuine issue of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Tolan*, 134 S. Ct. at 1863 (In ruling on a motion for summary judgment in a Section 1983 case, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor" (citation and internal quotation marks omitted).); *Matsushita*, 475 U.S. at 587-88 (citation omitted); *see also Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 790 (8th Cir. 2009) (stating that in ruling on a motion for summary judgment, a court must view the facts "in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them") (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). A court does "not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004) (citation omitted). Rather, a "court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

When a motion for summary judgment rests on the assertion of qualified immunity, summary judgment is appropriate only if the Court finds: 1) there are no genuine issues of material fact that would counter the qualified immunity defense, and 2) summary judgment on the issue of qualified immunity is proper as a matter of law. *Johnson v. Jones*, 515 U.S. 304, 313-14 (1995) (suggesting that, had the movant been entitled to summary judgment as a matter of law, summary judgment on the qualified immunity defense would have been proper in the absence of a genuine issue of material fact). Thus, it can be said that when the defense of qualified immunity is raised, the movant need not prove the absence of *any* material fact, but need only prove the absence of any material fact relating to *the defense of qualified immunity*. If a dispute exists as to any material

fact not pertaining to qualified immunity, but there are no disputes of material fact on the qualified immunity issue, summary judgment on the qualified immunity issue will be proper if the movant is so entitled as a matter of law. In keeping with the traditional summary judgment standard, all inferences of fact must be drawn in favor of the non-moving party. *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008).

## V.    ANALYSIS

Defendants make four primary arguments in favor of their motion for summary judgment: 1) plaintiff failed to assert his claims within the applicable statute of limitations period; 2) all named defendants are entitled to qualified immunity; 3) plaintiff failed to assert that each defendant was personally responsible for the alleged conduct sufficient to proceed to trial; and 4) plaintiff has failed to prove that he was damaged by the alleged conduct. (Doc. 44-2). The issues of qualified immunity, personal responsibility, and damages must be broken down into sub-issues for proper consideration.

On the point of qualified immunity, the Court must determine whether defendants violated a clearly established right with respect to each of the alleged violations: seclusion, deprivation of an education, and sexual abuse. Only by analyzing the applicable law with respect to each claim individually may the Court reach a proper decision as to the availability of qualified immunity. As for personal responsibility, the Court must consider whether plaintiff has shown that each defendant could have been personally responsible for each alleged damaging event—plaintiff's injured arm, deprivation of an education, seclusion, and sexual abuse. If any defendant was not personally responsible for one of the damaging events, plaintiff may not pursue a claim against that defendant for that event. Likewise, on the issue of damages, the Court must consider whether plaintiff has proven that he was damaged by each of the alleged damaging events sufficient to proceed to trial. Should the Court find that damages are not sufficiently pled with respect to any one or more of the itemized injuries, the Court should grant summary judgment as to those claims, while allowing the remaining claims to proceed.

## A.      Statute of Limitations

Actions brought under 42 U.S.C. § 1983 for claims accruing within a particular state are governed by the relevant statute of limitations period and tolling provisions set forth by that state. *Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (citing *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985) ("Only the length of the limitations period, and closely related questions of tolling and application, are to be governed by state law.")). Iowa Code § 614.8(2) provides that, absent a provision to the contrary, the statute of limitations period for causes of action accruing during minority is tolled for one year after the claimant attains the age of majority. Section 614.8(2) applies to personal injury claims such that the period of limitations is tolled during a claimant's minority. Defendants correctly assert that a different tolling provision applies to medical malpractice claims and that, under the medical malpractice statute of limitations, plaintiff's claim would be barred. IOWA CODE § 614.1(9). It is undisputed that the alleged injuries were caused during plaintiff's minority and that plaintiff brought this action within one year of attaining the age of majority. Thus, if plaintiff's claims arise under personal injury law, they will have been timely brought, whereas if the claims arise under medical malpractice law, the claims will not have been timely brought.

Defendants erroneously argue that plaintiff asserts a medical malpractice claim based on a single sentence contained in plaintiff's prayer for relief. Plaintiff merely states in his prayer for relief, "Additionally, [plaintiff] is entitled to relief pursuant to various state tort claims, including negligence and medical malpractice." (Doc. 19, at 11). This single reference does not amount to a claim for medical malpractice. At most, this sentence—upon which defendants hinge their statute of limitations argument—amounts to an indication that plaintiff reserves his right to bring medical malpractice claims in the future, should such claims be proper. As such, this single reference to medical malpractice is insufficient to bar plaintiff's claims based on expiration of the statute of limitations.

Defendants further argue that plaintiff's claims are medical malpractice claims disguised as personal injury claims and, in support of this argument, claim that "[t]he claims arise out of patient care." (Doc. 44-2, at 5). The underlying proposition contained within this allegation is that IJH was a facility rendering patient care and that defendants were individuals who, likewise, were responsible for rendering patient care. *See* § 614.1(9)(a) (providing the limitations period for "those [claims] founded on injuries to the person . . . against any physician and surgeon, osteopathic physician and surgeon, dentist, podiatric physician, optometrist, pharmacist, chiropractor, physician assistant, or nurse licensed under chapter 147, or a hospital licensed under chapter 135B, arising out of patient care . . ..").

I find no indication that IJH was intended to assume the role of a medical treatment facility tasked with rendering patient care. In fact, Iowa law specifies that no juvenile shall be transferred to IJH "who is a person with mental illness or an intellectual disability . . . and any such child in the home may be transferred to the proper state institution." § 233B.5. This ban on transferring the mentally ill and intellectually disabled to IJH and the permissive transference of such persons out of IJH can only indicate that IJH was not intended to provide care and treatment for these types of medical conditions and, rather, if such a condition did exist that required treatment, such treatment would be incidental to a juvenile's housing at IJH. Plaintiff does not allege that any cause of action accrued out of patient care, nor do defendants adequately allege that plaintiff's claims essentially amount to claims arising out of patient care. As such, plaintiff properly asserts that his causes of action arise under personal injury law.

In the absence of any indication that the current claims are predicated on IJH's existence as a patient care facility or that IJH did render patient care to plaintiff that constituted malpractice, the statute of limitations for medical malpractice claims do not apply to this case. Therefore, I respectfully recommend that the Court find that this cause of action is not barred by the statute of limitations.

## B.    *Qualified Immunity*

Qualified immunity is "an immunity from suit rather than a mere defense to liability [and] it is effectively lost if a case is erroneously permitted to go to trial." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).    Qualified immunity generally shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citation omitted).  Further:

> On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred.  If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful.

(*Id.*).  "[E]ven in the complete absence of any decisions involving similar facts, a right can be 'clearly established' if a reasonable public official would have known that the conduct complained of was unlawful." *Turner v. Ark. Ins. Dep't*, 297 F.3d 751, 755 (8th Cir. 2002).

The fact that a defendant did not have actual knowledge of the law is not enough, barring "extraordinary circumstances," to evade liability;"[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." (*Harlow*, 457 U.S. at 818-19.).    The Eighth Circuit "subscribe[s] to a broad view of the concept of clearly established law, and . . . look[s] to all available decisional law, including decisions from other courts, federal and state, when there is no binding precedent in this circuit." *Turner*, 297 F.3d at 755.  The Court therefore must determine whether the relevant law was clearly established and whether a reasonable person would have known of that law. The Court may address these questions in either order.  *Pearson*, 555 U.S. at 233-36

(The courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."). [3]

### 1. Deprivation of Education

When a state undertakes to provide public education, a property interest in education has been created that cannot be revoked without due process. *Goss v. Lopez*, 419 U.S. 565, 572-75 (1975); *Plyer v. Doe*, 457 U.S. 202, 221-23 (1982) (citing *Brown v. Bd. of Educ.*, 347 U.S. 483 (1954)). Iowa has undertaken to provide public education to students, both generally and when housed at facilities such as IJH. IOWA CODE § 282.6(2) ("Every school shall be free of tuition . . .."); § 282.33(1) ("A child who resides in [IJH] shall receive appropriate educational services."). Thus, it is clearly established that plaintiff had a property interest in his education that could not be deprived without due process of law. The question now becomes whether plaintiff was afforded the type of education to which he was entitled (i.e., whether his educational opportunities were adequate) and, if not, whether he was afforded due process prior to having his right to an education revoked.

Plaintiff argues that defendants deprived him of an education because of his frequent placement in solitary confinement. Plaintiff does not argue that he was deprived of an education simply by virtue of being housed at IJH. [4] Therefore, the appropriate inquiry is whether: 1) plaintiff was afforded due process prior to losing his opportunity

---

[3] Because a plaintiff may not assert Section 1983 liability on the basis of *respondeat superior*, the plaintiff must establish that each defendant was personally responsible for the harm alleged. The issue of whether each named defendant was personally responsible will be addressed *infra*.

[4] Plaintiff's second amended complaint states "Because of the frequent placement at IJH . . . [plaintiff's] schooling was either stopped or paused." (Doc. 19, at 7). However, when reading this sentence in context, it would appear that the reference to IJH is a typographical error and that the intended message was that plaintiff's schooling was curtailed because of his frequent placement in solitary confinement.

to obtain an education (i.e., prior to being relegated to solitary confinement), and 2) plaintiff's time in solitary confinement actually deprived him of his right to an education.

At this stage of the litigation, defendants have yet to allege that plaintiff was provided due process prior to losing his right to an education. Rather, defendants' argument is that plaintiff was not impermissibly denied access to an education. Plaintiff, likewise, does not fully substantiate an argument regarding any potential deprivation of due process as to any issue, including deprivation of his right to due process prior to losing his opportunity to earn an education. Nonetheless, the record is sufficiently developed to allow the Court to make a determination as to plaintiff's due process rights.

I respectfully recommend that the District Court find that there is a genuine issue of material fact whether plaintiff was deprived of due process in losing his opportunity to pursue an education. Although the Court has not been provided with plaintiff's daily schedule for his time at IJH, including the times during which plaintiff was to attend school, many of the prolonged incidents of solitary confinement likely interfered with plaintiff's ability to attend his classes. Such prolonged periods of seclusion in the Control Room—where plaintiff was placed in a locked room with no external stimuli—could span the better part of the daytime hours, and the decision to keep plaintiff in the Control Room was frequently made by one individual. (*See, e.g.*, Doc. 50-2, at 128, 134-36. 139-40, 154-57, 170). On such occasions, the staff member deciding to maintain plaintiff in the Control Room did not obtain approval from a supervisor and, seemingly, did not consult any other individual prior to making the decision to maintain plaintiff's status in the Control Room. (*Id.*). A non-supervisory staff member unilaterally making such a determination prior to depriving an individual of a right cannot be considered due process.

Importantly, on certain occasions, a supervisor was consulted prior to removing plaintiff from the educational environment. (*See, e.g.*, Doc. 50-1, at 26-28, 49-50, 54-55). However, even on these occasions, there is no indication of the factors considered when determining whether to remove plaintiff from the educational setting and, as a result, deprive plaintiff of his right to an education. For example, on one occasion

defendant Gerbo requested at 8:42 A.M. that plaintiff be removed from the classroom and instead sent to the Infirmary, with his ability to return to the classroom to be assessed at the conclusion of the lunch hour. (*Id.*, at 49-50). Even without knowing plaintiff's daily schedule while at IJH, it would appear that defendant Gerbo had plaintiff removed from the educational environment for at least several hours and that defendant Gerbo made this determination without consulting any other individual. This instance is representative of several instances in which plaintiff was removed from the educational setting. Very little documentation is provided to show the factors leading up to plaintiff's removal from the educational environment, and I am simply not able to determine at this summary judgment stage that plaintiff was afforded due process. Between the pleadings and the records provided, a fact-finder could make a reasonable inference that plaintiff was not afforded due process prior to being deprived of his right to an education. Therefore, I respectfully recommend the District Court decline to grant qualified immunity on this basis.

### 2. *Seclusion*

"[J]uveniles . . . who have not been convicted of crimes, have a due process interest in freedom from unnecessary bodily restraint, which entitles them to closer scrutiny of their conditions of confinement than that accorded convicted criminals." *Santana v. Collazo*, 714 F.2d 1172, 1179 (1st Cir. 1983). A state may punish a juvenile only after he has been convicted of a crime. (*Id.*). However, a state may impose such conditions as are necessary to "maintain[ ] institutional order and safety." (*Id.* at 1180). Thus, there is a fine distinction between conditions that are imposed to maintain institutional order and conditions that amount to retribution. (*Id.* ("The distinction between conditions imposed for the legitimate purpose of maintaining institutional order and safety and those that amount to retribution is a fine one. Certainly, administrators of a juvenile home must be free to discipline the home's residents. And, in doing so, the state of course inflicts punishment for offending behavior.")). *See also Youngberg v.*

*Romeo*, 457 U.S. 307, 320 (1982) (balancing the state's interest in maintaining an organized society against an adult institutional resident's liberty interest); *Bell v. Wolfish*, 441 U.S. 520, 538-39 (1979) ("A court must decide whether the [restriction or condition] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose."); *Ingraham v. Wright*, 430 U.S. 651, 669-71 (1977) (comparing the Eighth Amendment's toleration of punishment in the context of a convicted inmate with the impermissible infliction of unreasonable corporal punishment on a schoolchild).

Therefore, it has been clearly established that plaintiff had the right not to be relegated to solitary confinement as punishment, but IJH was permitted to relegate plaintiff to solitary confinement to maintain institutional order. Thus, the question becomes whether plaintiff was subjected to solitary confinement as punishment—instead of for acting in a manner that threatened institutional order. If so, defendants will not be entitled to qualified immunity on the issue of seclusion.

Defendants' expert on the issue of solitary confinement, Dr. Kirk Heilbrun, Ph.D., examined the records documenting plaintiff's time in seclusion. (Doc. 53-2, at 25-27). Although Dr. Heilbrun noted that the records were incomplete and difficult to inspect due to subpar record keeping, Dr. Heilbrun ultimately determined that plaintiff was subjected to some form of seclusion or restraint 510 times between August 30, 2008, and December 21, 2010, with no documentation available for the time period ranging from March 4, 2009, through December 7, 2009. (*Id.*, at 25-26). Dr. Heilbrun further found:

> Of the 510 incidents of seclusion or restraint . . . a total of 380 (75%) were rated as warranted based on risk of imminent harm to self or others, 48 (9%) as not clearly warranted based on risk, 7 (1%) as requested by [plaintiff], and 77 (15%) as could not be rated meaningfully using the available documentation.

(*Id.*, at 26).

Upon my own review of the record, I agree that the available documentation is inconsistent and makes it difficult to fully determine the circumstances of plaintiff's

confinement and the circumstances leading up to that confinement. However, given that defendants' own expert has asserted that 9% of the instances of confinement were "not clearly warranted based on risk," I must conclude that there is a genuine issue of material fact regarding whether at least some of the instances of confinement may have been prompted by some penal interest. (*Id.*). However, because the record keeping was inconsistent and appears to be incomplete, it is impossible to determine based on the records alone whether plaintiff's right to be free from punishment was violated. Thus, it becomes necessary to turn to the remainder of the record to determine whether that clearly established right was violated.

Plaintiff, as the party resisting summary judgment, bears the burden of showing that his right to be free from punishment was violated. *Mosley*, 415 F.3d at 910. Although the IJH records establish the possibility that plaintiff was subjected to solitary confinement as punishment, their inadequacy precludes plaintiff from resting his claim of punitive motive on the records alone. Dr. Richard Nightingale, M.D., reviewed plaintiff's records from IJH and indicated that where prolonged use of solitary confinement is utilized, such confinement is typically of a punitive nature. (Doc. 45, at 55-57 ("Prolonged use of a medical isolation unit is not therapeutic and is simply punishment.")). Dr. Nightingale stopped short of opining that plaintiff was subjected to solitary confinement for such a period of time as would indicate punishment as the motive for said confinement. (*Id.*). However, the IJH records reflect that plaintiff spent extremely prolonged periods in seclusion and was required to remain in seclusion, at times, even when he was "lying Quiet" in the Control Room. (Doc. 50-2, at 292). Lying quietly is a very positive response to seclusion, which suggests there was no legitimate basis for requiring plaintiff to remain in the Control Room for at least forty-five minutes beyond the time at which plaintiff began behaving himself. Based on the foregoing, I conclude that a genuine issue of material fact exists regarding whether seclusion was used as an improper method of punishment, as opposed to being used purely to maintain

institutional order. Therefore, I respectfully recommend the District Court deny qualified immunity on this basis.

### 3. Sexual Abuse

"There is no doubt the right at issue—a pretrial detainee's right to be protected from sexual assault by another inmate—is clearly established." *Walton v. Dawson*, 752 F.3d 1109, 1118 (8th Cir. 2014) (citing *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000)). "It is equally beyond dispute that rape or sexual assault at the hands of other prisoners is sufficiently serious to amount to a deprivation of constitutional dimension." (*Id.* (citations and internal quotation marks omitted)). The right to be protected from sexual assault is violated when an official "is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates." *Curry*, 226 F.3d at 977. Although this standard contains both an objective and a subjective prong, the critical question for qualified immunity purposes "is whether it was 'objectively legally reasonable' for the . . . official to believe that his conduct did not violate the inmate's clearly established Eighth Amendment right." (*Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). Plaintiff was not an inmate at the time the alleged violations occurred; in fact, plaintiff had not been charged with any crime in connection with his residence at IJH. The Court cannot afford a lesser degree of protection to an individual who is simply housed at a facility than it would afford to a prisoner or a pretrial detainee. "[C]ivilly-committed persons, like pretrial detainees . . . are entitled to at least as great protection as that afforded convicted prisoners under the Eighth Amendment." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012) (citation and internal quotation marks omitted). Therefore, any rights a convicted prisoner or a pretrial detainee has must be afforded to plaintiff as well.

It is indisputable that plaintiff had a right to be free from rape or sexual assault at the hands of another resident. It is further clearly established that an official's deliberate indifference toward a substantial risk that a plaintiff could be the victim of sexual assault is unlawful, and liability attaches when that harmful assault occurs. *Kahle v. Leonard*,

477 F.3d 544, 550-51 (8th Cir. 2007) ("[Defendant] does not dispute that sexual assault is a serious harm. Thus, if there was a substantial risk that [plaintiff] would suffer that harm, and if [defendant] was deliberately indifferent to that risk, then [defendant] can be held liable under § 1983 for violating [plaintiff's] rights under the Fourteenth Amendment."). Therefore, the law surrounding plaintiff's right to be free from rape or sexual assault, and the requirement that an official not be deliberately indifferent toward a substantial risk of rape or sexual assault, has been clearly established. As a result, if there was a substantial risk that plaintiff could become the victim of a rape or sexual assault and defendants were deliberately indifferent toward that risk, defendants will not be entitled to qualified immunity.

Defendant Hendricks was directly responsible for supervising plaintiff when the alleged sexual assault occurred. Because Section 1983 liability is not available under the doctrine of *respondeat superior*, plaintiff properly asserts liability for the assault only against defendant Hendricks. As such, the more narrow question becomes whether it would have been objectively reasonable for *defendant Hendricks* to believe that his conduct did not violate plaintiff's right. If defendant Hendricks reasonably could have believed that: 1) the sexual activity at issue did not constitute rape or sexual assault, or 2) exhibiting deliberate indifference toward a substantial risk was not unlawful, he will enjoy qualified immunity. Further, if defendant Hendricks did not exhibit deliberate indifference, defendant Hendricks will likewise be entitled to qualified immunity. It therefore becomes necessary to discuss defendant Hendricks' alleged deliberate indifference and Iowa sexual assault and rape law.

Under Iowa law, "sexual abuse" is:

Any sex act between persons . . . when the act is performed with the other person in any of the following circumstances:
1) The act is done by force or against the will of the other. If the consent or acquiescence of the other is procured by threats of violence toward any person[,] . . . the act is done against the will of the other.

2)  Such other person is suffering from a mental defect or incapacity which precludes giving consent, or lacks the mental capacity to know the right and wrong of conduct in sexual matters.

3)  Such other person is a child.

IOWA CODE § 709.1 (2009).

A "sex act" is "any sexual contact between two or more persons by: penetration of the penis into the . . . anus; contact between the mouth and genitalia or by contact between the genitalia of one person and the genitalia or anus of another person . . .." IOWA CODE § 702.17.  For purposes of the relevant sections of the Iowa Code, a child "is any person under the age of fourteen years."  § 702.5.  The youths engaged in oral sex and possibly anal sex.  (Doc. 50, at 72).  On the dates of the alleged sexual activities, plaintiff was fourteen years old, co-participant T.G. was thirteen years, and co-participant M.H. was seventeen years.  (Doc. 50, at 72).  Thus, only T.G. was considered a child on the relevant dates and plaintiff will be unable to establish that the sexual activities were abusive by virtue of his age alone.

However, there is no debate that non-consensual sexual activity is rape.  *Iowa v. Christensen*, 414 N.W.2d 843 (Iowa 1987).  As the law defining non-consensual sexual activity as rape is very clearly established and well known in today's society, defendant Hendricks reasonably should have known that non-consensual sexual activity constituted rape.  The remaining questions, therefore, are whether plaintiff's right to be free from such rape was violated, and if defendant Hendricks was deliberately indifferent toward a substantial risk that plaintiff would be raped or sexually assaulted.

Under the facts alleged, there is a genuine issue of material fact whether plaintiff was subjected to non-consensual sex.  There is at least some evidence suggesting that plaintiff was subjected to non-consensual sex.  On the other hand, there is no incontrovertible evidence proving that plaintiff was not subjected to non-consensual sex. Therefore, in the absence of definitive evidence disproving the allegation of non-

consensual sex, I am not prepared to recommend granting summary judgment on this issue.

Even assuming, however, that plaintiff was the victim of sexual assaults, I find that defendant Hendricks is entitled to qualified immunity on this issue because there is no evidence showing that there was a substantial risk that plaintiff would become the victim of rape or sexual assault. Although the Court has been presented with evidence regarding previous inappropriate sexual encounters at IJH (none of which involved plaintiff) and with evidence of the sexual encounters in which plaintiff was involved, the Court has not been presented with evidence showing that, prior to the instant alleged assault, there was a substantial risk that plaintiff would become the victim of rape or sexual assault. Although plaintiff was termed an ASAP youth, meaning that he was subject to the Adolescent Sexual Awareness Policy, this designation alone is insufficient to prove that there was a substantial risk that plaintiff would become the victim of rape or sexual assault. Moreover, plaintiff has not presented any evidence from which a jury could conclude that defendant Hendricks was aware of a substantial risk that plaintiff would be sexually assaulted, or that he was deliberately indifferent to that risk. Although defendant Hendricks was apparently disciplined for poorly supervising the youths, that demonstrates negligence, at most. Therefore, I respectfully recommend that the District Court grant defendant Hendricks qualified immunity as to this issue.

### C. *Personal Involvement*

In order to maintain a claim under 42 U.S.C. § 1983, a plaintiff must plead that each defendant "has personally violated the plaintiff's constitutional rights." *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). A supervisor may not be liable under the doctrine of *respondeat superior* for a Section 1983 violation by an employee, but a supervisor may be liable "if either his direct action or his failure to properly supervise and train the offending employee caused the constitutional violation at issue. Even if a supervisor is not involved in day-to-day operations, his personal involvement may be found if he is involved in creating, applying,

or interpreting a policy that gives rise to unconstitutional conditions." (*Id.* (citations and internal quotation marks omitted)).

Much of plaintiff's argument regarding the personal involvement of each defendant is based on a theory of *respondeat superior*, which, as previously stated, is an improper basis for Section 1983 liability. Defendants Hanus, Avery, and Gerbo were all employed at IJH in supervisory capacities; defendant Hendricks did not occupy a supervisory role.

### 1. Sexual Abuse

Under the facts alleged, defendant Hendricks alone was responsible for supervising plaintiff on the nights the sexual abuse allegedly occurred. If Hendricks was deliberately indifferent to plaintiff's right to be free from sexual abuse, then defendant Hendricks could be personally responsible for the events giving rise to this alleged injury.

However, plaintiff fails to show that the remaining three defendants—Hanus, Avery, and Gerbo—were personally involved in this event. There is no indication that the three were present when the alleged abuse occurred or that they bore any direct responsibility for preventing the abuse. Rather, plaintiff appears to argue that because Hendricks was a subordinate employee to defendants Hanus, Avery, and Gerbo, the latter three are responsible for the former's behavior. This is nothing more than a *respondeat superior* argument. Nor has plaintiff presented evidence that any of the three supervisory defendants failed to supervise and train defendant Hendricks or that they were "involved in creating, applying, or interpreting a policy" that led to the sexual conduct. *Jackson*, 747 F.3d at 543.

When considering a motion for summary judgment, all reasonable inferences must be drawn in favor of the non-movant; however, plaintiff has not presented the Court with any evidence upon which a favorable inference could be drawn regarding the personal involvement of defendants Hanus, Avery, and Gerbo. Absent evidence showing that the three supervisory defendants could be liable under some theory other than *respondeat superior*, the Court has no choice but to find plaintiff has not carried his burden of establishing personal involvement on the issue of sexual abuse with respect to defendants

Hanus, Avery, and Gerbo. Therefore, I respectfully recommend the District Court grant summary judgment in favor of defendants Hanus, Avery, and Gerbo on the issue of sexual abuse.

### 2. *Seclusion and Deprivation of Education*

With respect to the issue of seclusion, plaintiff has presented evidence that could lead a jury to find that each defendant was personally responsible for plaintiff's seclusion. Plaintiff alleges that he was deprived of an education because he was so frequently confined in seclusion. Therefore, because plaintiff has shown that each defendant was personally responsible for plaintiff's seclusion, plaintiff has likewise shown that each defendant was personally responsible for depriving plaintiff of an education.

The IJH records with which the Court has been provided show that each of the four defendants was at least aware that plaintiff was subjected to seclusion. Each defendant, at the very least, initialed documents referencing the use of seclusion on plaintiff. The extent of the knowledge each defendant possessed with respect to the conditions of plaintiff's confinement, however, has yet to be determined.

Although each defendant's complete role cannot be ascertained at this time, I am able to identify several facts from which a jury could conclude that each defendant had a role in plaintiff's seclusion. Defendant Hendricks personally placed plaintiff in seclusion on certain occasions. (*See, e.g.*, Doc. 50-1, at 56). Defendant Avery issued a memo that provided an exception to the Control Room Policy (Doc. 45, at 8-10) requiring approval if the use of a seclusion room were to exceed sixty minutes (*see, e.g.*, Doc. 50-2, at 170 (extended time authorized pursuant to "Directive from Avery—Exception to Policy per Letter For Safety"); Doc. 50-2, at 246 (extended time authorized by "Ilona Avery per policy exception. continued behaviors")). This memo, effectively, nullified the requirement that periods of confinement lasting longer than one hour in duration be individually approved by the duty superintendent. Further, defendants Gerbo and Hanus each approved, on numerous occasions, documentation that showed that plaintiff was being placed in seclusion frequently, sometimes for a large portion of the school day.

(*See, e.g.*, Doc. 50-1, at 24-28, 42, 49-50, 54-55, 106, 142, 146).   Based on this evidence, I conclude there is a genuine issue of material fact regarding whether each of the four defendants was personally involved in plaintiff's seclusion that allegedly led to the deprivation of plaintiff's rights to be free from punishment and the right to an education.

### 3.    *Injured Arm*

Finally, plaintiff raises the issue of his injured arm.   The facts, as I understand them, are that plaintiff became irritated one day while in the company of others and began leaving a room.   As he was doing so, plaintiff attempted to open the door, but instead forced his arm through a glass window on the door and suffered severe injuries as a result.

Plaintiff may only pursue damages from the appropriate person, meaning one who was personally responsible for the injury in some fashion and acted with deliberate indifference with respect to plaintiff injuring his arm.   Plaintiff has neither named that appropriate person as a defendant, nor has he attempted to establish that anyone other than plaintiff was responsible for the injury.   In plaintiff's discussions of the arm injury, there is simply no mention of any named individual other than plaintiff.   This makes it impossible for any reasonable juror to conclude that one of the named defendants bore some personal responsibility for plaintiff's arm injury or the events giving rise to the arm injury.   Therefore, I respectfully recommend the Court grant defendants' motion for summary judgment with respect to plaintiff's arm injury.

### D.    *Damages*

"Because a § 1983 action is a type of tort claim, general principles of tort law require that a plaintiff suffer some actual injury before he can receive compensation." *Irving*, 519 F.3d at 448.   Absent proof of an actual injury, a plaintiff is only entitled to recover nominal damages for a deprivation of procedural due process under the Fourteenth Amendment.   *Carey v. Piphus*, 435 U.S. 247, 266-67 (1978).   To state a claim, plaintiff must do more than merely assert legal conclusions.   It is insufficient for

a plaintiff to make "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The entirety of plaintiff's due process allegation in his complaint is contained in the conclusion and states, in full:

> As a direct result of the aforementioned acts, [plaintiff's] rights as guaranteed by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution and by Articles 1 and 17 of the Iowa Constitution were violated. Said actions, which included cruel and unusual punishment, violated [plaintiff's] constitutional rights to be free from such inhumane and excessive treatment and further violated his rights of due process of law.

(Doc. 19, at 11). Plaintiff returns to a discussion of the Fourteenth Amendment in his resistance to defendants' motion for summary judgment as a vehicle for bringing his claims for cruel and unusual punishment. As there had been no "formal adjudication of guilt" in relation to plaintiff's residence at IJH, the Eighth Amendment does not apply to the treatment plaintiff received at IJH. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). However, as plaintiff had not been adjudicated guilty of any offense—or even charged with any offense—he was entitled to protections "at least as great as the Eighth Amendment protections available to a convicted prisoner." (*Id.*).

Plaintiff's discussion of Eighth Amendment violations is therefore attributable to the Fourteenth Amendment, as the Fourteenth Amendment is the vehicle by which plaintiff must bring his claims. *Walton*, 752 F.3d at 1117 ("As a pretrial detainee, [plaintiff] necessarily rests his failure to train claim . . . on the Due Process Clause of the Fourteenth Amendment."). Plaintiff alleges facts sufficient to support a colorable Fourteenth Amendment claim on this basis. The facts set forth could allow a factfinder to determine that the conditions of plaintiff's confinement posed a substantial risk of serious harm (objective component) and that defendants were deliberately indifferent to plaintiff's health or safety (subjective component). *Beaulieu*, 690 F.3d at 1045. By establishing the plausibility of such a finding, plaintiff has established that defendants are not entitled to summary judgment on the issue of damages as a matter of law. However,

plaintiff will then carry the burden of establishing the extent of his damages. If plaintiff is able to establish only a deprivation of procedural due process, he will be entitled to no more than nominal damages. *Carey*, 435 U.S. at 266-67. If plaintiff establishes greater than a *de minimis* injury, he will be entitled to compensatory damages. *Irving*, 519 F.3d at 448. Although I find that plaintiff has alleged a deprivation of due process sufficient to entitle him to nominal damages and thereby survive summary judgment, I will proceed to analyze whether plaintiff has sufficiently alleged his damages on the remaining issues such that those claims may survive summary judgment.

### 1. *Injured Arm*

Plaintiff has shown that he was damaged by the injuries to his arm. Plaintiff testified that his right arm became paralyzed after it went through a glass window at IJH, plaintiff required surgery as a result of the injury, and medical records indicate that physical therapy was necessary. (Doc. 50, at 100). It is difficult to conceive that paralysis would not be a damaging injury. Furthermore, defendants' statement that "[t]he extent of the injuries and medical treatment are documented in medical records" makes it clear that some injury was sustained and some medical treatment was received. (Doc. 52-1, at 5). Even if the injury is not as severe as plaintiff alleges, defendants have inherently acknowledged that some injury was sustained; if defendants' contention were that no injury was sustained, it would make little sense to state that the extent of injuries is documented in medical records.

The remaining issues are how significant plaintiff's injuries were and whether defendants were at fault for those injuries; these are questions of fact for the factfinder to determine and need not be answered at this stage of litigation. It is sufficient to determine that plaintiff has adequately asserted his damages. However, as I have already concluded that plaintiff does not allege that any defendant was personally responsible for the arm injury, these questions need not go to the jury. Therefore, I respectfully recommend that the District Court find that plaintiff has carried his burden with respect to the establishment of damages for the injuries plaintiff sustained to his arm, but that the

District Court grant summary judgment with respect to this issue for lack of personal responsibility.

### 2. *Deprivation of Education*

If plaintiff can show at trial that he has suffered actual harm as a result of being denied an education, he may recover compensable damages for deprivation of that right. *See generally Carey*, 435 U.S. at 247. This is distinguishable from plaintiff's ability to recover damages for deprivation of due process. Rather, to recover damages for being deprived of an education, plaintiff must prove that he suffered an actual compensable injury by virtue of not being afforded an education while housed at IJH. At the summary judgment stage, however, to successfully refute defendants' assertion that plaintiff has not shown he has been damaged by being deprived of an education, plaintiff need only show that he was damaged. Plaintiff need not prove the extent of those damages to survive summary judgment.

Plaintiff has alleged that as a result of being deprived of an education, he has not obtained a high school diploma or equivalent, has only a fifth grade reading level, and has been unable to return to school because of his reading level. (Doc. 48-2, at 16). Although these allegations on their face do not establish damages, the facts as alleged are sufficient to allow a jury to determine that plaintiff suffered compensatory damages as a result of being deprived of an education. Should a jury find that plaintiff's fifth grade reading level, inability to return to school, and lack of a high school diploma or equivalent are worthy of damages, plaintiff may recover. For the purposes of summary judgment, plaintiff has sufficiently pleaded his damages with respect to his education.

### 3. *Seclusion*

The distinct issue with respect to defendants' damages argument is not whether plaintiff's secluded confinement was lawful; rather, the issue is whether plaintiff has sufficiently asserted damages assuming that such seclusion was unlawful. Plaintiff's expert, Dr. Richard Nightingale, provided that, from a mental health standpoint as a result of being secluded, "[plaintiff] did not leave [IJH] better and I think a compelling

case can be made that he was worse at the end of [his residence at IJH]." (Doc. 50, at 31). Dr. Nightingale further detailed the various psychological and developmental implications of seclusion, especially during one's youth. Although Dr. Nightingale did not opine that plaintiff suffered these mental deteriorations, Dr. Nightingale's opinions and testimony bolster the plausibility of plaintiff's claim that he suffered damages and further indicate the type of harm an individual such as plaintiff could suffer.

Turning now to the evidence in support of the specific damages plaintiff suffered, I am persuaded that plaintiff did adequately allege his damages resulting from solitary confinement to survive summary judgment. Eighth Amendment violations cannot properly be asserted prior to a formal adjudication of guilt; therefore, conditions-of-confinement claims by those who have not been adjudicated guilty must be addressed by way of the Fourteenth Amendment. *City of Revere*, 463 U.S. at 244. However, when assessing such claims, the Court must apply the same standards as it would apply to a conditions-of-confinement claim brought under the Eighth Amendment by a convicted prisoner. *Beaulieu*, 690 F.3d at 1045. Therefore, plaintiff's Eighth Amendment discussion can properly be attributed to his assertion of Fourteenth Amendment violations.

There is at least some evidence to support plaintiff's allegation that he experienced hallucinations and paranoia to the extent that he would not eat based on a belief that staff members "were putting something in" his food and eventually weighed only ninety-seven pounds. (Doc. 45, at 21 16:6-13). Plaintiff further asserts violations stemming from the use of solitary confinement on a juvenile and, in support, states that he was deprived of both the basic human needs of contact and communication, and "the minimal civilized measure of life's necessities," including the use of a bed. Instead, plaintiff was forced to sleep on the floor when in solitary confinement. (Docs. 19, at 9-10; 45 18:24-19:24 (Dep. of Larisha Bradford) (explaining that plaintiff's room in the Infirmary was devoid of any furniture, drawings, pictures, or personal belongings); 49-1, at 16-18; 50, at 9 50:11-14 (Dep. of JaQuan Bradford) ("The infirmary . . . the rooms have nothing in it.

You've got to sleep on the floor. Have nothing in it, you've got to sleep on the floor.")). *Demeyer v. Ferguson*, 2011 WL 4031219, Civil No. 10-5092, at *8 (W.D. Ark.) (determining that a question existed as to whether an adult inmate being forced to sleep for months on a one-inch thick mattress placed on the floor was constitutional).

Finally, "compensatory damages are appropriate where juveniles have wrongfully received solitary confinement." *H.C. by Hewitt v. Jarrard*, 786 F.2d 1080, 1088 (11th Cir. 1986); *King v. Higgins*, 702 F.2d 18 (1st Cir. 1983) (permitting an inmate to recover compensatory damages for having served an unwarranted 15 days in solitary confinement). If plaintiff is able to establish that: 1) his confinement was truly solitary confinement, and 2) such confinement was wrongful, he may be able to collect damages for the harm sustained during his wrongful solitary confinement. These are questions of fact that need to be answered by the factfinder. This claim is separable from the due process claim because the due process claim would address the procedure—or lack thereof—taken in committing plaintiff to solitary confinement while the issue of damages resulting from such confinement addresses only the issue of any harm caused by wrongful solitary confinement, regardless of whether plaintiff received the full breadth of process due to him. Thus, plaintiff may pursue claims for both deprivation of due process and for damages stemming from the solitary confinement.

### 4. *Sexual Abuse*

"[T]he substantial physical and emotional harm suffered by a victim of [sexual] abuse are compensable injuries." *Berryhill v. Schriro*, 137 F.3d 1073, 1076 (8th Cir. 1998). Because the injuries now alleged are of the type warranting monetary damages, plaintiff need only prove that he suffered *some* harm as a result of the alleged abuse in order to survive summary judgment. Plaintiff asserts that following the abuse, he "became increasingly more aggressive and destructive, had difficulty remaining even calm enough to think, was diagnosed with Oppositional Defiant Disorder as well as Antisocial Personality Traits, and had his medicines changed." (Doc. 49-1, at 12) (internal quotation marks omitted). Additionally, plaintiff claims he has repressed any

memory of the events. (*Id.*). Based on these allegations alone, plaintiff has asserted sufficient damages resulting from the abuse to defeat defendants' damages claim with respect to the abuse. Whether the subsequent injuries were a result of the abuse as opposed to some secondary factor is for the jury to determine.

## VI. CONCLUSION

For the reasons given, I respectfully recommend the District Court **grant in part and deny in part** defendants' motion for summary judgment. I respectfully recommend the District Court **deny** defendants' motion for summary judgment with respect to damages, the statute of limitations defense, and the claim of qualified immunity on the issues of plaintiff's seclusion and education, Hendricks' claim that he was not personally involved in the alleged sexual abuse, and all defendants' claims that they were not personally involved in plaintiff's seclusion and education. I respectfully recommend the District Court **grant** qualified immunity on the issue of sexual abuse and, further, **grant** summary judgment based on a lack of personal responsibility on the issue of sexual abuse and plaintiff's arm injury. In summary, at trial plaintiff should be allowed to pursue claims based on his seclusion and deprivation of an education, but not based on any other claims.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 27th day of October, 2017.

_____

C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa